[No. 16474.  Department One.  November 28, 1921.]

## B. F. PEARCE, *Appellant,* v. PUYALLUP & SUMNER FRUIT GROWERS' CANNING COMPANY, *Respondent.*[1]

SALES (29) — CONSTRUCTION OF CONTRACT — SUBJECT-MATTER — QUANTITY AND ASCERTAINMENT THEREOF.  Where defendant offered to supply the trade with a certain kind of cabbage in carload lots and plaintiff submitted an order for five carloads, subject to confirmation, to which defendant replied "will start shipping cabbage as per your letter 13th, but may not have full five cars to supply. Will furnish as many cars as we have," which was accepted by plaintiff, there was a contract between the parties, binding only to the extent of one carload (FULLERTON, J., dissents).

SAME (156)—ACTIONS FOR BREACH—FAILURE TO DELIVER—MEASURE OF DAMAGES.  On breach of a contract of sale of fifteen tons of cabbage, the measure of damages for failure to deliver is the difference between the market price on the date the cabbage should have been delivered and the market value at the time of the seller's breach.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered February 5, 1921, upon findings in favor of the defendant, dismissing an action on contract, tried to the court.  Reversed.

*Byers & Byers,* for appellant.

*M. F. Porter,* for respondent.

BRIDGES, J.—By this action the plaintiff sought to recover damages of defendant because of its failure to ship to him three carloads of cabbages.  The case was tried by the court, which made findings of fact and conclusions of law, the conclusions being to the effect that the action should be dismissed.  Later a judgment was entered dismissing the action, and the plaintiff has appealed therefrom.  The testimony not being before us, the question is, do the findings sustain the judg-

[1]Reported in 201 Pac. 905.

ment of dismissal. The court found that, on November 13, 1918, the respondent sent out to the trade a circular letter, reading as follows:

"We are pleased to advise that we are now receiving from our growers an excellent quality of Danish Ballhead cabbage, which we can furnish in crates at 1¼c per lb. f. o. b. Puyallup, in carloads at 1⅛c per lb. f. o. b. Puyallup. A crate holds about 160 lbs. The cabbage is firm, well trimmed, and of good quality. We can ship one crate or many carloads."

On the same day appellant submitted to respondent an offer, subject to confirmation, of

"$16 a ton crated on 5 cars of fancy, medium size, graded Danish Ballhead cabbage, of a greenish color, f. o. b. cars Puyallup, cabbage to be free from any and all diseases and frost and inside growth. First car to be shipped first of next week, the other four cars to follow, one car every 3 days . . ."

On the following day respondent, by wire, requested appellant to come to its place of business and inspect the cabbage. This the appellant refused to do, but asked for a confirmation or rejection of his order, and on December 16, the respondent wired appellant as follows:

"Will start shipping cabbage as per your letter 13th, but may not have full five cars to supply. Will furnish as many cars as we have. Believe there will be from 3 to 5, possibly more if you desire them. Trust this is satisfactory."

Appellant accepted the offer.

The theory of the trial court was that these several letters and telegrams failed to make a contract for any cabbage whatsoever. In so holding we think it was in error. We construe respondent's telegram of December 16 to mean that it obligates itself to sell and ship to appellant at least one car of the kind of cabbage ordered, and as many more, up to five in all, as it has

or can obtain from its growers. Appellant's order of the 13th was for five cars, the "first car to be shipped first of next week," and respondent agreed that it would "start shipping cabbage as per your letter of the 13th . . ." This could mean nothing else than that respondent agreed to ship the first car at the time mentioned in the order. But it did not bind itself to ship any other cars unless it had the kind of cabbage ordered, for it expressly told appellant that it "may not have full five cars to supply. Will furnish as many cars as we have." If it had more cars of cabbage which would comply with the order, then it obligated itself to ship them up to five in all. The burden was on appellant to show that respondent had cabbage of the kind ordered. Apparently he failed to make any such showing. At any rate, the findings do not indicate that respondent had any such cabbage. Such being the situation, we hold that respondent was obligated to ship but one car. Since it did not ship any, it is liable to damages for the failure to ship the one car.

The appellant's offer, which was accepted by the respondent, was sixteen dollars per ton, and that each car should contain fifteen tons. The court found that, at the time these cabbages should have been shipped, the market price was one and one-quarter cents per pound. These figures would indicate that the appellant was to pay $240 per car, and that, at the time of respondent's breach, the market value was $375, and that appellant's damage is $135.

The judgment is reversed, with instructions to the lower court to enter judgment for the appellant in the sum of $135.

PARKER, C. J., MITCHELL, and TOLMAN, JJ., concur.

FULLERTON, J. (dissenting)—The contract sued upon, as I read it, is a contract to ship to the appellant as

many car loads of cabbage as the respondent had which would comply with the appellant's specifications up to five in number, and was not a contract to ship one car load or any definite quantity. Since it does not appear that the respondent had as much as one car load of cabbage of the kind specified, it follows that it was not obligated to ship any at all.

The judgment of the trial court, in my opinion, should be affirmed.